**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADVANCE RCM CONSULTING SERVICE, LLC<br><br>Plaintiff,<br><br>v.<br><br>UROLOGY CLINIC, P.C.<br><br>Defendant. | No. 2:26-cv-07430 |

## COMPLAINT

Plaintiff Advance RCM Consulting Service, LLC, by and through its undersigned counsel, brings its Complaint against Defendant Urology Clinic, P.C., and avers as follows:

### The Parties

1. Plaintiff Advance RCM Consulting Service, LLC (hereinafter "Plaintiff"), is a limited liability company organized in Pennsylvania with its principal place of business located at 604 Unruh Avenue, Philadelphia, PA 19111.

2. Defendant Urology Clinic, P.C. (hereinafter "Defendant"), is a professional corporation organized in Colorado with its principal place of business at 501 Anglers Dr, Ste 202, Steamboat Springs, CO 80487.

### Jurisdiction & Venue

3. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of parties and the amount in controversy is in excess of $75,000.

4. This Court is the proper venue pursuant to 28 USCS § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Philadelphia, Pennsylvania.

**The Master Services Agreement**

5. On or about November 1, 2025, Plaintiff and Defendant entered into a contract for Plaintiff to provide various medical billing services for Defendant's medical practice by executing the Master Services Agreement (the "MSA" or "Agreement"). A true and correct copy of the Master Services Agreement is attached hereto as Exhibit A.

6. The MSA controls all medical billing services that Defendant engaged Plaintiff to provide, which Respondent separately detailed and defined for Plaintiff, including services such as, *inter alia*, payment posting, coding, and billing approval; handling patient calls through and with the AdvanceMD web portal; claims handling, submission, and billing adjustment, and; patient account reconciliation. *See* Ex. A, Section 1.1, pg. 1.

7. In exchange for the provision of Plaintiff's medical billing services, Defendant agreed to pay Plaintiff $6,000 for the first month of work performed by Plaintiff "and thereafter a monthly Flat fee of $15,000 amount [sic] for Services performed[.]" Ex. A, Section 2.1, pg. 2.

8. The term of the MSA was to begin on November 1, 2025 and:

> [C]ontinue[] for a period of one (1) year[.] … UPON EXPIRATION OF THE INITIAL TERM, THIS AGREEMENT WILL AUTOMATICALLY RENEW FOR SUBSEQUENT ONE (1) YEAR TERMS … UNLESS AND UNTIL EITHER PARTY TERMINATES BY PROVIDING SIXTY (60) DAYS' WRITTEN NOTICE OF TERMINATION TO THE OTHER PARTY[.]

Ex. A, Section 3.1, pg. 3 (all caps in original).

9. Accordingly, the total consideration to be paid for the entire initial term of the MSA was to be $171,000.00, and each renewal term, $180,000.

10. Per the terms of the MSA, Plaintiff was to "submit to Customer an invoice for the Fees for each preceding calendar month[,]" and, subsequently, Defendant was obligated to "pay all undisputed amounts set forth in the invoice for the Fees for such preceding calendar month" to Plaintiff within thirty days "after receipt of the Invoice[.]" Ex. A, Section 2.2, pg. 2.

11. Any disputes concerning the invoiced amounts for services performed by Plaintiff were to be resolved in accordance with Section 2.4 of the MSA, which provides, in relevant part:

> **2.4** Invoice Dispute. If Customer has a good-faith dispute with any Invoice or the calculation of the Monthly Fee in an Invoice, Customer shall, no later than the Due Date: (a) pay in full all undisputed portions of the Invoice; and (b) provide a detailed written notice to Advance RCM Consulting Service setting forth the specific factual grounds on which Customer disputes the Invoice[.]

Ex. A, Section 2.4, pg. 2.

12. Besides the written notice for termination of any renewal term, the MSA provides express terms for either party to terminate the Agreement for cause:

> **3.2** Termination for Cause. Either Party may terminate this Agreement or any applicable SOW [Statement of Work] on thirty (30) calendar days' notice to the other Party for such Party's material breach of this Agreement or an SOW that, if curable, is not cured prior to the end of such thirty-day notice period.

Ex. A, Section 3.2, pg. 3.

13. To give notice of any termination for cause, the MSA expressly provides:

> **10.11** Notices. Any notice under this Agreement will be in writing and delivered to the addresses noted below, will refer to this Agreement, and will be personally delivered or sent by electronic mail (with receipt confirmed by the intended recipient), by nationally recognized courier service, or by registered or certified mail (return receipt requested). All notices will be deemed given upon the earlier of affirmative confirmation of receipt or three (3) days after deposit in the mail or with a courier service.

Ex. A, Section 10.11, pp. 8-9.

14. Wherever a dispute arises concerning the scope of work subject to the MSA, the MSA terms take precedence:

> **10.14** Order of Precedence. If there is any conflict between this Agreement and any terms contained in any other agreement reference in this Agreement, then: … (b) as between the terms of this Agreement and the terms of any SOW, the terms of this Agreement will control[.]

Ex. A, Section 10.14, pg. 9.

15. The parties expressly agreed that the MSA is governed "by the Laws of the State

of Delaware, without regard to any rules governing conflicts of Laws." Ex. A, Section 10.5, pg. 8.

16. Moreover, the MSA provides that the prevailing party "will be entitled to the award of reasonable attorneys' fees and costs, in addition to whatever relief the prevailing Party may be awarded." Ex. A, Section. 10.7, pg. 8.

**Factual Background and The Parties' Dispute**

17. Plaintiff provided medical billing services pursuant to the MSA, beginning in November 2025 and continuing each month through March 2026. Accordingly, Plaintiff issued to Defendant monthly invoices for each month worked.

18. At no point from November 2025 through March 2026 did Defendant dispute any of Plaintiff's submitted invoices. In fact, Defendant paid Plaintiff's monthly invoices for November and December 2025 and January and February 2026.

19. On or about April 1, 2026, a representative of Defendant called Plaintiff, stating that Defendant was terminating Plaintiff's contract and to "cease billing, effective immediately" or words to that effect.

20. The next day, April 2, 2026, Plaintiff emailed Defendant's representative requesting clarification of the direction to cease billing services and reminding Defendant that Defendant had failed to provide proper notice of any dispute or termination pursuant to the MSA. A true and correct copy of the April 2, 2026 Email is attached hereto as Exhibit B.

21. On or about April 15, 2026, Plaintiff received a letter from Defendant's Legal Counsel, Benjamin R. LaBranche, Esq., dated April 3, 2026, which claimed to be terminating the MSA due to an alleged material breach by Plaintiff. A true and correct copy of the April 3, 2026 Termination Letter is attached hereto as Exhibit C.

22. The Termination Letter stated, in pertinent part, that Defendant was terminating the

MSA and, further, contended that Plaintiff had failed to perform agreed-to medical billing services since the inception of the MSA in November 2025:

> On November 1, 2025, The Urology Clinic entered a contract for medical billing services with ARCM. On March 19, 2026, they informed you they were seeking to terminate the contract effective April 18, 2026. Their reason for terminating the contract was based on cause and material breaches of the contract. More specifically, ARCM failed to provide any services for the months of November and December, as well as not billing out any charges past March 9th, 2026. The Urology Clinic also informed ARCM to cease all activity on behalf of the clinic to avoid further damage caused by the ongoing breach.

Ex. C, pg. 1.

23. Defendant's contention that Plaintiff failed to provide any services is patently false. To the contrary, Plaintiff provided medical billing services to Defendant in November and December 2025, and for each month thereafter, through March 2026. Accordingly, there is no grounds to have terminated Plaintiff for cause.

24. Moreover, Defendant has failed to pay Plaintiff the contractually obligated compensation of $15,000 for March 2026.

25. Along with refusal to pay the $15,000 monthly fee for March 2026, the wrongful termination of the MSA has wrongly deprived Plaintiff of the expected income of an additional $105,000 for performance of the MSA throughout the remainder of the MSA initial term, April 2026 through October 2026.

26. Accordingly, Defendant's wrongful termination of the MSA has resulted in Plaintiff incurring actual damages of $120,000, plus additional attorney's fees and costs that Plaintiff has incurred in litigating the instant dispute.

## Count I
## Breach of Contract

27. Plaintiff incorporates the preceding paragraphs as if set forth fully at length herein.

28. Plaintiff provided medical billing services to Defendant pursuant to the MSA, and

Defendant accepted such services.

29. Plaintiff expected compensation for the services rendered to Defendant and would be providing services and receiving compensation pursuant to the MSA for at least the duration of the contract's initial term.

30. But for Defendant's breach and wrongful termination of the MSA, Plaintiff would not have incurred substantial damages.

31. Plaintiff is entitled to $15,000 for the services provided in March 2026 plus $105,000 for the compensation that Plaintiff would have received absent Defendant's wrongful termination of the MSA.

32. Pursuant to the terms of the MSA and the applicable laws of the State of Delaware, Plaintiff is entitled to relief including damages of at least $120,000 plus attorney's fees and litigation costs.

WHEREFORE, Plaintiff Advance RCM Consulting Service, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant Urology Clinic, P.C., in an amount in excess of $75,000, plus attorney's fees and costs, and such further relief this Court deems just and proper.

CHARLSON BRABER MCCABE & DENMARK, PC.

Date: September 25, 2026

*/s/ Lance M. Sacknoff*

Noah H. Charlson, Esquire
Pa. ID #: 89210
Lance M. Sacknoff, Esquire
Pa. ID #: 331850

1628 JFK Blvd, Suite 1803
Philadelphia, PA 19103
(267) 704-7301
*Attorneys for Plaintiff*